AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Google Pixel Cellular Phone<br>Case Number:  SYS-21-12-0430<br>("Target Device 2") | )<br>)<br>)<br>)<br>)    Case No.    '21 MJ04962<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC §1324 | Alien Smuggling |
| 18 USC § 2 | Aiding and Abetting |
| 18 USC § 371 | Conspiracy |

The application is based on these facts:

See Attached Affidavit of CBP Enforcement Officer Ramon A. Galindo, U.S. Customs and Border Protection, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ramon A. Galindo, U.S. Customs and Border Protection
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 12/22/2021 _____

_____
*Judge's signature*

City and state:  San Diego, California

Hon. JILL L. BURKHARDT, U.S. Magistrate Judge
*Printed name and title*

1

## **ATTACHMENT A-2**

2

PROPERTY TO BE SEARCHED

3    The following property is to be searched:

4
Black Google Pixel Cellular Phone
Case Number:  SYS-21-12-0430
5        ("Target Device 2")

6    Target Device 2 is currently in the custody of the Department of Homeland Security,

7 Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1

**ATTACHMENT B**

2

ITEMS TO BE SEIZED

3    Authorization to search the cellular telephone described in Attachment A-2 includes

4    the search of disks, memory cards, deleted data, remnant data, slack space, and temporary

5    or permanent files contained on or in the cellular telephone for evidence described below.

6    The seizure and search of the cellular telephone shall follow the search methodology

7    described in the affidavit submitted in support of the warrant.

8    The evidence to be seized from the cellular telephone will be electronic records,

9    communications, and data such as emails, text messages, chats and chat logs from various

10   third-party applications, photographs, audio files, videos, and location data, for the period

11   of October 12, 2021 to December 12, 2021:

12       a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

13

14       b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

15

16       c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

17       d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

18

19       e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

20

21       f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

22

23

24

which are evidence of crimes, violations of Title 8, United States Code, Section 1324, Alien Smuggling; Title 18, United States Code, Section 2, Aiding and Abetting; and Title 18, United States Code Section 371, Conspiracy.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**AFFIDAVIT**

I, Ramon A. Galindo, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.   I submit this affidavit in support of an application for warrants to search the following electronic devices (collectively referred to as "Target Devices"):

> Black iPhone Cellular Phone
> Case Number:  SYS-21-12-0429
>  ("Target Device 1")

> Black Google Pixel Cellular Phone
> Case Number:  SYS-21-12-0430
>  ("Target Device 2")

as further described in Attachments A-1 and A-2, and to seize evidence of crimes, violations of Title 8, United States Code, Section 1324, Alien Smuggling; Title 18 United States Code, Section 2, Aiding and Abetting; and Title 18, United States Code Section 371, Conspiracy, between October 12, 2021 to December 12, 2021, as further described in Attachment B.

2.   The requested warrants relate to the investigation and prosecution of Ramzan Imranovich USMANOV ("D1") and Kazbek TATARASHVILI ("D2") for bringing illegal aliens into the United States. The Target Devices are currently in the custody of Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

3.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents.  This affidavit is intended to show that there is sufficient

1 | probable cause for the requested warrant and does not purport to set forth all of my
2 | knowledge of the investigation into this matter.  Dates and times are approximate.

3 | **TRAINING AND EXPERIENCE**

4 |     4.    I have been employed by U.S. Customs and Border Protection ("CBP") since
5 | 2003 and am currently assigned to the San Ysidro Criminal Enforcement Unit.  I graduated
6 | from the CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco,
7 | Georgia.  I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C),
8 | Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer
9 | for fifteen years.  I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to
10 | make applications for search and seizure warrants and serve arrest warrants.  I have
11 | experience and have received training with respect to conducting investigations of
12 | immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

13 |     5.    My current duties involve the preparation of criminal and administrative cases
14 | for prosecution, including the use of linking related subjects and information via electronic
15 | equipment and telephones. In the course of my duties, I investigate and prepare for
16 | prosecution cases against persons involved in the inducement, transportation, and
17 | harboring of illegal aliens into and within the United States; and, the utilization of illegally-
18 | obtained, counterfeit, altered or genuine immigration documents by illegal aliens to
19 | illegally gain entry or remain in the United States.

20 |     6.    During my tenure as a CBP Officer, I have participated in the investigation of
21 | a number of cases involving the smuggling of aliens from Mexico into the United States
22 | and transportation of illegal aliens within the United States, which have resulted in the
23 |
24 |

1  issuance of arrest warrants, search warrants, seizure warrants, and the indictments of
2  persons for alien smuggling, including drivers, passengers, and guides.

3      7.      Through the course of my training, investigations, and conversations with
4  other law enforcement personnel, I have gained a working knowledge of the operational
5  habits of alien smugglers and alien transporters, in particular those who attempt to smuggle
6  aliens into the United States from Mexico and transport them throughout the Southern
7  District of California.  I am aware that it is a common practice for alien smugglers to work
8  in concert with other individuals and to do so by utilizing cellular telephones to maintain
9  communications with co-conspirators and/or illegal aliens in order to further their criminal
10  activities.  Because they are mobile, the use of cellular telephones permits alien smugglers
11  and transporters to easily carry out various tasks related to their smuggling activities,
12  including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit,
13  providing instructions to transporters, guiding aliens to specific pick up locations, warning
14  accomplices about law enforcement activity in the area and the status of check-point
15  operations, and communicating with co-conspirators who guide aliens, coordinate drop off
16  locations, and/or operate alien stash houses.

17      8.      The smuggling of aliens generates many types of evidence, including, but not
18  limited to, cellular phone-related evidence such as voicemail messages referring to the
19  arrangements of travel, names, photographs, text messaging (via SMS or other
20  applications), and phone numbers of co-conspirators and illegal aliens.  For example,
21  drivers and passengers responsible for transporting illegal aliens are typically in telephonic
22  contact with co-conspirators immediately prior to and/or following the crossing of the
23  illegal aliens at the border, at which time they receive instructions, including where to pick-
24

up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States.  These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.  It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9.     Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

1    10.    This information can be stored within disks, memory cards, deleted data,

2  remnant data, slack space, and temporary or permanent files contained on or in the cellular

3  telephone. Specifically, searches of cellular telephones may yield evidence:

4
    a.    tending to indicate efforts to smuggle aliens from Mexico into the United
5           States;

6
    b.    tending to identify accounts, facilities, storage devices, and/or services–such
          as email addresses, IP addresses, and phone numbers–used to facilitate alien
7           smuggling and transportation of smuggled aliens;

8
    c.    tending to identify co-conspirators, criminal associates, or others involved in
          alien smuggling, or transportation of smuggled aliens;

9
    d.    tending to identify travel to or presence at locations involved in the smuggling,
          transportation, or harboring of illegal aliens, such as stash houses, load houses,
10           or delivery points;

11
    e.    tending to identify the user of, or persons with control over or access to, the
          Target Device(s); and/or
12

13
    f.    tending to place in context, identify the creator or recipient of, or establish the
          time of creation or receipt of communications, records, or data involved in the
14           activities described above.

15                     **FACTS SUPPORTING PROBABLE CAUSE**

16    11.    On December 12, 2021, at approximately 9:33 P.M., D1, a male later

17  identified as Ramzan Imranovich USMANOV, a Russian citizen, entered the United States

18  from Mexico at the San Ysidro Port of Entry beyond the international boundary line as the

19  driver of a Ford Expedition accompanied by 11 other Russian nationals as passengers. D2,

20  a male later identified as Kazbek TATARASHVILI, a Russian citizen, was directly behind

21  D1. D2 also entered the United States beyond the international boundary line driving a

22  black Mercedes Benz accompanied by five other Russian citizens as passengers. Both

23  Defendants bypassed a CBP Officer working pre-primary operations. The CBP Officer

24

working pre-primary operations, reached out with his hand, towards oncoming traffic, creating a gesture to hold traffic as he crossed past an opening between concrete barriers. As the CBP Officer reached the other side of the barrier, the Ford Expedition, driven by D1, followed by the Mercedes Benz driven by D2, proceeded north at a high rate of speed and failing to yield to the CBP Officer's gestures.  The Ford Expedition made an abrupt stop a few yards north of the limit line causing the Mercedes Benz to collide into the rear of the Ford Expedition. CBP Officers responded and extracted all persons from both vehicles.  All occupants were escorted to the security office for initial processing.

12.    In the security office, Defendants were queried by fingerprint and photograph comparison through the Automated Biometric Identification System (IDENT) and the Integrated Automated Fingerprint Identification System (IAFIS) with negative results. Defendants were determined to be citizens and nationals of Russia without lawful documents to enter the United States.

13.    At approximately 5:35 A.M., D1 was advised of his *Miranda* rights and elected to give a statement.  D1 stated he is a citizen of Russia without lawful documents to enter, reside or pass through the United States.  He stated he traveled from Russia to Mexico beginning on November 7, 2021. D1 stated he watched Youtube instructional videos on how to prepare for the trip.  He and a friend purchased the Ford Expedition in Tijuana, Mexico. D1 stated he knew none of his passengers had legal documents to legally enter the United States.  D1 stated he and his friend split the cost of the vehicle to facilitate their entry into the United States.  D1 stated he was going to Brooklyn, New York to claim asylum, and seek work and residence.

14.    D1 gave CBP Officers consent to search his cellphone. D1 provided CBP Officers with the passcode to his Apple iPhone, and the Officers confirmed that the seized iPhone was D1's cellphone because the passcode provided by D1 worked to unlock the iPhone.

15.    At approximately 7:09 A.M., D2 was advised of his *Miranda* Rights and elected to make a statement. D2 stated he is a citizen of Russia without legal documents to enter or reside in the United States. D2 stated he made travel arrangement from Russia to Mexico and left Russia on December 2, 2021. D2 stated he and his friend purchased the Mercedes Benz from an unknown male on Facebook for $2000 US dollars. He met D1 and the other passengers at the hotel they were staying at in Tijuana. D2 stated he knew the five passengers in his vehicle did not have legal documents to legally enter the United States. D2 admitted he left Russia for the sole purpose of entering the United States, and to live and work in Chicago, Illinois.

16.    D2 also gave CBP Officers consent to search his cellphone, a black Google Pixel cellphone. D2 provided CBP Officers with the passcode, which was used to unlock the Pixel, and Officers were able to manually review the contents.

17.    CBP Officers also video-recorded interviews with Material Witnesses ("MW") regarding their involvement and observations during the smuggling event.

18.    MW1, Aslan Isaev, admitted to being a citizen of Russia without documents to lawfully enter or reside in the United States. MW1 stated he met D1 at a hotel in Tijuana. MW1 stated he contributed $500 US dollars to purchase the vehicle he was traveling in when he attempted to cross. MW1 denied paying any smuggling fees to come to the United

1  States.  He stated he wanted to go to Portland, Oregon to live and work, and does not have
2  family in the United States.

3       19.    MW2, Maxim Kuliev, admitted to being a citizen of Russia without
4  documents to lawfully enter or reside in the United States.  MW2 stated he met D1 in a
5  hotel in Tijuana.  MW2 stated he made his own arrangements to come to the United States
6  and did not pay smuggling fees to anyone.  MW2 admitted he contributed $1200 US dollars
7  to purchase the vehicle he was traveling in when he attempted to cross.  MW2 stated he
8  wanted to go to New York with his family to live and work.

9       20.    MW3, Mukhammed Idrisov, admitted to being a citizen of Russia without
10 documents to lawfully enter or reside in the United States.  MW3 stated he met D1 in
11 Russia and has known him since 2016.  He stated he made all arrangements on his own to
12 come to the United States from Russia and did not pay smuggling fees to anyone.  MW3
13 stated he wanted to go to Brooklyn, New York with his family to live and work.

14      21.    MW4, Azamat Albakov, admitted to being a citizen of Russia without
15 documents to lawfully enter or reside in the United States. MW4 stated he met D2 in
16 Turkey and traveled with him to Mexico City, Mexico. He stated he made all the
17 arrangements to come to the United States from Russia and did not pay smugglings fees to
18 enter the United States.  MW4 stated he contributed $1200 US Dollars to pay for the
19 Mercedes Benz that D2 drove.  MW4 stated he wanted to go to Chicago, Illinois to live
20 and work.

21      22.    MW5, Dzhavid Eldarzade, admitted to being a citizen of Russia without
22 documents to lawfully enter or reside in the United States.  MW5 stated he met D2 at a
23 hotel in Tijuana and made his own arrangements to enter the United States in the vehicle.

24

1   MW5 stated he did not pay anyone to smuggle him into the United States.  MW5 stated he

2   was traveling with his wife and two children to Los Angeles, California to live and work.

3         23.      The Black iPhone Cellular Phone (Target Device 1) was discovered within

4   D1's personal effects.  A Black Google Pixel Cellular Phone (Target Device 2) was

5   discovered within D2's personal effects.  The Target Devices were subsequently seized.

6         24.      Based upon my experience and training, consultation with other law

7   enforcement officers experienced in alien smuggling investigations, and all the facts and

8   opinions set forth in this affidavit, I believe that telephone numbers, contact names,

9   electronic mail (email) addresses, appointment dates, messages, pictures and other digital

10   information are stored in the memory of the Target Devices.  In light of the above facts and

11   my experience and training, there is probable cause to believe that Defendants were using

12   the Target Devices to communicate with others to further the smuggling of illegal aliens

13   into the United States and receiving instructions from social media, including Youtube, on

14   how to enter the United States.  Further, in my training and experience, alien smugglers

15   may be involved in the planning and coordination of transporting and smuggling events in

16   the days and weeks prior to an event. Co-conspirators are also often unaware of a

17   defendant's arrest and will continue to attempt to communicate with a defendant after their

18   arrest to determine the whereabouts of the aliens. Based on my training and experience, it

19   is also not unusual for individuals, such as Defendants, to attempt to minimize the amount

20   of time they were involved in their smuggling activities, and for the individuals to be

21   involved for weeks and months longer than they claim, including the time it takes to make

22   international travel arrangements. Accordingly, I request permission to search the Target

23   Devices for data beginning on October 12, 2021, up to and including December 12, 2021.

24

1

## METHODOLOGY

2   25.   It is not possible to determine, merely by knowing the cellular telephone's

3 make, model and serial number, the nature and types of services to which the device is

4 subscribed and the nature of the data stored on the devices. Cellular devices today can be

5 simple cellular telephones, tablets, and text message devices, can include cameras, can

6 serve as personal digital assistants and have functions such as calendars and full address

7 books and can be mini-computers allowing for electronic mail services, web services and

8 rudimentary word processing. An increasing number of cellular service providers now

9 allow for their subscribers to access their device over the internet and remotely destroy all

10 of the data contained on the device. For that reason, the device may only be powered in a

11 secure environment or, if possible, started in "flight mode" which disables access to the

12 network.  Unlike typical computers, many cellular telephones do not have hard drives or

13 hard drive equivalents and store information in volatile memory within the device or in

14 memory cards inserted into the device. Current technology provides some solutions for

15 acquiring some of the data stored in some cellular telephone models using forensic

16 hardware and software. Even if some of the stored information on the device may be

17 acquired forensically, not all of the data subject to seizure may be so acquired. For devices

18 that are not subject to forensic data acquisition or that have potentially relevant data stored

19 that is not subject to such acquisition, the examiner must inspect the device manually and

20 record the process and the results using digital photography. This process is time and labor

21 intensive and may take weeks or longer.

22   26.   Following the issuance of this warrant, a case agent familiar with the

23 investigation will collect the subject cellular telephone and subject it to analysis. All

24

forensic analysis of the data contained within the telephones and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

27.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

28.    Law enforcement has previously attempted to obtain the evidence sought by this warrant through the owner's consent.  Both Defendants consented to the search of their respective cellphone but law enforcement officials encountered errors during the download attempts and were unable to obtain evidence from the cellphones.

## CONCLUSION

29.    Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Devices will yield evidence of Alien Smuggling, in violation of Title 8, United States Code, Section 1324, Aiding and Abetting, in violation of Title 18, United States Code, Section 2, and Conspiracy, in violation of Title 18 United States Code, Section 371 .

30.    Because the Target Devices were seized at the time of D1's and D2's arrests and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Devices. As stated above, I believe that the

appropriate date range for this search is from October 12, 2021, through December 12, 2021.

31.   Accordingly, I request that the Court issues warrants authorizing law enforcement to search the item described in Attachments A-1 and A-2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Ramon A. Galindo, CBP Enforcement Officer

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 22nd day of December, 2021.

HON. JILL L. BURKHARDT
United States Magistrate Judge